UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

    Plaintiff,

v.

No. 5:19-CV-070-H

WEST INFRASTRUCTURE
CONSTRUCTION, LLC, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a straightforward breach-of-contract case. The defendant, West Infrastructure

Construction, is a construction company. The plaintiff, Fidelity and Deposit Company of

Maryland, is a trust company that issues surety bonds to commercial entities. Fidelity

issued payment and performance bonds for West's construction project. Before Fidelity

issued any bonds, West signed a notarized indemnity agreement in which it agreed to

indemnify Fidelity for all liability and loss related to claims on the bonds. West failed to

pay subcontractors, who made claims on the bonds. Fidelity paid out $407,643.89 to West's

subcontractors and suppliers on the bond claims. Fidelity incurred another $322,239.98 in

consulting and attorneys' fees. Despite the parties' valid contract, West has failed to

indemnify Fidelity. As explained below, the undisputed facts show that Fidelity has met all

the elements of a Texas breach-of-contract claim and is entitled to judgment as a matter of

law. Therefore, the Court grants summary judgment for Fidelity and awards Fidelity

$729,883.87, plus interest.

## 1.   Factual Background

At its core, this is a standard breach-of-contract dispute. The defendants are Mike West, his wife Theresa West, West Materials, LLC, and West Infrastructure Construction, LLC (collectively "West"). Dkt. No. 6 at 1–2. Mike West's companies are both single-member LLCs that are engaged in the commercial construction business in West Texas. *Id.* at 2–3. The plaintiff, Fidelity, is a Maryland corporation with its principal place of business in Illinois that—among other things—issues surety bonds to commercial entities. *Id.* at 1, 3. The Court has diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 7.

In 2017, West entered several contracts with Dahlgren Industrial, Inc. related to the "Roosevelt New Construction" project in Littlefield, Texas. Dkt. No. 46-1 at 2–3. The project was related to the construction of a dairy facility and industrial milk-processing plant. *See Continental Dairy Facilities Southwest, Project Roosevelt, Littlefield, Texas*, Dahlgren Industrial, perma.cc/H6ED-Z9H8 (last visited Nov. 25, 2024); Phyllis Riley, *New Dairy Facility for Littlefield Texas*, Clift Land Brokers (Nov. 3, 2015), perma.cc/4LX6-YHFP. West approached Fidelity to obtain payment and performance bonds in connection with the construction project. Dkt. No. 6 at 3.

On behalf of West Infrastructure Construction, LLC, and West Materials, LLC, Mike West and Theresa West executed an indemnity agreement in favor of Fidelity as consideration for the issuance of the requested bonds. Dkt. No. 46-1 at 2. The indemnity agreement is signed, notarized, and dated July 11, 2017. Dkt. No. 6-1. In the contract, West agreed to "exonerate, indemnify, and hold [Fidelity] harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any

2

Claim, (c) [West] failing to timely and completely perform or comply with this Agreement, [and] (d) [Fidelity] enforcing this Agreement . . . ." *Id.* at 1.

Relying on the indemnity agreement, Fidelity issued payment and performance bonds on behalf of West and in favor of Dahlgren—essentially guaranteeing West would perform under its construction contract with Dahlgren and pay any subcontractors what they were owed. Dkt. No. 46-1 at 2–3. Fidelity issued three payment and performance bonds related to the Roosevelt project. *Id.* The bonds were for "Site Utilities," "Asphaltic Concrete Paving," and "Earthwork," and they were worth over $7 million (West's total contract price with Dahlgren). *Id.*

West did not fulfill its contractual obligations, and Dahlgren and various subcontractors of West made claims on the bonds. *Id.* at 3. Dahlgren asserted claims on the performance bonds. *Id.* Morsco Supply, RER Plumbing, and Forterra Pipe—all subcontractors of West—asserted claims on the payment bonds. *Id.* Fidelity notified West of the claims and subsequently sent demand letters to West. *Id.*

As a result of the payment-bond claims, Fidelity paid out $407,643.89 to West's subcontractors and suppliers: $256,042.14 to Morsco Supply, $89,100.00 to RER Plumbing, and $62,501.75 to Forterra Pipe. *Id.* at 4. Fidelity litigated Dahlgren's performance-bond claim in state court and eventually settled. *Id.* As a result of that litigation and other legal matters related to West's refusal to indemnify, Fidelity has incurred $278,831.11 in billed attorneys' fees and $10,552.50 in unbilled or expected attorneys' fees. *Id.*; Dkt. No. 46-9 at 2–3. Finally, Fidelity has paid $32,856.37 to Nicholson Professional Consulting due to the bond claims. Dkt. No. 46-1 at 4. In total, Fidelity seeks a damage award of $729,883.87, plus pre-judgment and post-judgment interest. Dkt. No. 44 at 2.

3

## 2.    Procedural Background

Fidelity filed its first amended complaint in April 2019, asserting a breach-of-contract claim and seeking to recover its losses, costs, and attorneys' fees under the indemnification agreement. Dkt. No. 6. The Court found there is diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 7. West answered (Dkt. No. 12), and the Court issued a scheduling order (Dkt. No. 17).

In June 2020, the parties filed a joint motion—which the Court granted—to stay the case pending the result of state litigation between Fidelity and Dahlgren. Dkt. Nos. 19; 20. The Court later concluded that—since Texas law provides that a duty-to-indemnify question is justiciable only after the underlying suit has concluded—the case should remain abated until the state-court action was resolved. Dkt. No. 25. The state case between Fidelity and Dahlgren was finally tried in February 2023 in the 154th District Court of Lamb County, Texas; Fidelity and Dahlgren settled in April 2023. Dkt. No. 31 at 1. Fidelity and West notified the Court in September 2023 that they had reached a tentative settlement agreement. *Id.*

In January 2024, Fidelity notified the Court that West refused to finalize their tentative settlement agreement. Dkt. No. 34. Counsel for West stated his belief that a settlement was still possible and requested two additional weeks, which the Court granted. Dkt. Nos. 36; 37. The parties did not reach a final settlement, and—at Fidelity's request—the Court lifted the stay and issued a scheduling conference order. Dkt. Nos. 39; 40. The Court subsequently issued a scheduling order, setting a dispositive-motions deadline of August 9, 2024. Dkt. No. 42 at 1. Fidelity timely filed its motion for summary judgment on August 7, 2024. Dkt. Nos. 44–46. West's deadline to respond to Fidelity's motion

4

(August 28, 2024) came and went. *See* Loc. Civ. R. 7.1(e). To date, counsel for West has not responded to the motion for summary judgment. After thoroughly reviewing the plaintiff's briefing, the relevant and admissible summary judgment evidence, and the applicable law, the Court granted the plaintiff's motion for summary judgment on October 15, 2024. *See* Dkt. No. 47. The Court issues this more detailed Memorandum Opinion and Order to explain the Court's decision to grant the motion.

### 3.   Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact" (*Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019)) and "identifying those portions of [the record] which it believes demonstrate [that] absence" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In evaluating a summary judgment motion, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). The Court must consider materials cited by the parties, but it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). When the nonmoving party fails to

offer proof concerning an essential element of its case, it "necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). When the nonmoving party fails to respond to a summary judgment motion, the court must determine "whether the facts [in the record] presented by the [movant] create an appropriate basis to enter summary judgment against the [nonmovant]." *Id.* And when that record "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

**4. Analysis**

**A. The Court grants Fidelity's summary judgment motion because the undisputed facts show Fidelity has met all the elements of its breach-of-contract claim and is entitled to judgment as a matter of law.**

This case is not a close call. West breached its indemnity agreement with Fidelity. As a result, Fidelity suffered damages. Following the state-court litigation over one of the bonds, West apparently backed out of a tentative settlement agreement with Fidelity, resulting in this motion for summary judgment. West has neither filed a response to the motion nor presented any evidence in its defense. As Fidelity noted when it requested to reopen the case following West's refusal to consummate the settlement, "[t]his is a simple indemnity case and . . . it can be adjudicated on summary judgment." Dkt. No. 34 at 2. The Court grants Fidelity's motion for summary judgment for the following reasons.

**i. The facts are undisputed due to West's failure to respond to Fidelity's summary judgment motion.**

The Court construes all of Fidelity's evidence and factual assertions as undisputed because West did not respond to the motion for summary judgment.

6

When the nonmoving party fails to file a timely response to a proper motion for summary judgment, he cannot satisfy his burden to "designate specific facts showing that there is a genuine issue for trial." *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins,* 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

Although a court may not enter a "default" summary judgment when the nonmoving party fails to respond to a motion for summary judgment, the nonmoving party is relegated to his unsworn pleadings, which do not constitute summary judgment evidence. *See Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996). In that situation, the court may accept the moving party's evidence as undisputed. Fed. R. Civ. P. 56(e)(2); *Eversley*, 843 F.2d at 174. Thus, "[a] motion for summary judgment cannot be granted simply because there is no opposition," but "a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 941 n.4 (N.D. Tex. 2019) (quoting *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014)).

In other words, the Court must conduct a basic Rule-56 analysis even though Fidelity's motion for summary judgment is unopposed. *See Hibernia Nat'l Bank v. Administracion Cent. S.A.*, 776 F.2d 1277, 1279 (5th Cir. 1985). The Court is free to "grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Day*, 768 F.3d at 435; *see also Eversley*, 843 F.2d at

174. And, when the nonmoving party fails to respond, the Court may treat the moving party's facts as "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *Eversley*, 843 F.2d at 174.

Local Rule 7.1(e) states that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." Fidelity timely filed its motion on August 7. *See* Dkt. No. 44. West had until August 28 to file its response. It failed to do so, making Fidelity's motion unopposed. Therefore, the Court accepts Fidelity's facts—as presented in its brief and supported by the evidence in its appendix in support of its motion (Dkt. Nos. 45–46)—as undisputed. *See Bookman,* 945 F. Supp. at 1002. Because West did not respond to the motion—nor present any other facts or evidence in the record—it is relegated to its answer (Dkt. No. 12), which does not constitute competent summary judgment evidence. *Bookman,* 945 F. Supp. at 1002; *see also Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.").

Regardless, West's answer contains only generic denials and the invocation of bad faith, waiver, and justification as affirmative defenses. *See* Dkt. No. 12 *passim*. Even if this bare invocation of affirmative defenses constituted summary judgment evidence, West has made no showing sufficient to establish a genuine dispute of material fact surrounding those affirmative defenses. *See Celotex*, 477 U.S. at 322–23. Because West bears the burden of proof for any affirmative defenses, its failure to offer proof concerning them "mandates a finding that no genuine issue of fact exists." *Adams*, 465 F.3d at 164.

Although the Court has no duty to sift through the record in search of evidence favorable to West, it has done so anyway and finds none. *See Ragas*, 136 F.3d at 458. The

8

record is devoid of any facts or evidence disputing the allegation that West breached the indemnity agreement and is liable for damages.

To sum up, when the nonmovant has not responded, "the [C]ourt may not enter a 'default' summary judgment, [but] it may accept the evidence submitted by [the movant] as undisputed." *UNUM Life Ins. Co. v. Long*, 227 F. Supp. 2d 609, 614 (N.D. Tex. 2002) (citing *Bookman*, 945 F. Supp. at 1002). The Court does so here. Because the Court construes the facts and evidence presented by Fidelity as undisputed, it therefore finds there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a).

## ii. The undisputed facts show that Fidelity has met all the elements of its Texas breach-of-contract claim.

Even after it finds there is no genuine dispute as to any material fact, the Court still must complete the Rule-56 analysis by ensuring that the undisputed evidence supports each element of a Texas breach-of-contract claim. Here, the Court concludes that it does. Fidelity has met every element of its claim and is entitled to judgment as a matter of law.

When deciding an issue of Texas law, federal courts follow the lead of Texas courts. *Myers v. Crestone Intern., LLC*, 121 F. App'x 25, 28 (5th Cir. 2005). Specifically, in contract disputes, federal courts "apply Texas law to interpret the contract."[1] *Phila. Indem. Ins. Co. v. Reytech Servs., LLC*, No. 20-11274, 2021 WL 4142390, at *2 (5th Cir. Sept. 10, 2021) (citing *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309–10 (5th Cir. 2010)).

---

[1] Fidelity assumes that Texas law applies. Because there is no choice-of-law clause in the contract, the Court agrees. A federal court must follow the choice-of-law rules of the state in which it sits. *Goosehead Ins. Agency v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 381–82 (N.D. Tex. 2020) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). When there is no choice-of-law clause in a contract, Texas courts apply the Restatement (Second) of Conflict of Laws § 188's "most significant relationship test." *See id.* Here, the Court finds that Texas has the most significant relationship to the substantive issue in this case because the contract was made here, the contract concerns a construction project here, most of the parties to the contract are domiciled here, and the bonds were issued to Texas residents. *See id.* at 382–83.

Under Texas law, courts "must give [a contract's] words their plain meaning, without inserting additional provisions into the contract." *Id.* (quoting *Liberty Mut. Ins. Co. v. Hisaw & Assocs. Gen. Contractors, Inc.*, 514 F. App'x 407, 411 (5th Cir. 2013) (quoting *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008))). Courts "must also strive to 'ascertain and give effect to the intent of the parties as that intent is expressed in the contract.'" *Liberty Mut. Ins.*, 514 F. App'x at 411 (citing *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006)).

"Indemnity agreements are read as any other contract under Texas law." *Phila. Indem. Ins.*, 2021 WL 4142390, at *2 (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998)). An indemnity agreement is simply "a contractual promise to 'hold the indemnitee harmless against either existing and/or future loss liability.'" *Merchs. Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455, at *2–3 (S.D. Tex. June 21, 2023) (quoting *Dresser Indus. Inc. v. Page Petroleum Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). It is an enforceable contract and should be construed under the normal rules of contract interpretation. *Id.* Therefore, a surety's claim for breach of an indemnity agreement is a variation of a claim for breach of contract. *Id.* at *3.

Broadly speaking, in Texas, "[t]he essential elements in a suit for breach of contract are (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Id.* (quoting *Associated Auto. Inc. v. Acceptance Indem. Ins. Co.*, 705 F. Supp. 2d 714, 723 (S.D. Tex. 2010)); *see also Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-CV-2092-M, 2013 WL 145502, at *4 (N.D. Tex. Jan. 14, 2013).

More specifically, under Texas law, to prevail on a breach-of-indemnity-agreement claim, the plaintiff must establish five elements: "(1) a contractual indemnity agreement existed between the [parties]; (2) the agreement obligated [defendant] to indemnify [plaintiff] in the event claims were made on the bonds issued . . .; (3) claims were made on the bonds issued . . .; (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and (5) [plaintiff] has been damaged." *Arch Ins. Co.*, 2013 WL 145502, at \*4 (quoting *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995)). As with contracts generally in Texas, the Texas Supreme Court requires that indemnity agreements be strictly construed to give effect to the parties' intent, as expressed in the agreement. *Id.* (citing *Associated Indem. Corp.*, 964 S.W.2d at 284).

In sum, a valid indemnity agreement is a normal contract in Texas, and to claim a breach of one is to make a breach-of-contract claim. Based on the agreement's text and the undisputed evidence, the Court concludes that Fidelity has met all five elements of its claim.

### a.   Fidelity has met the first and second elements of its claim.

The Court begins with the plain language of the contract. The Court must give the contract's words their plain meaning and strictly construe the contract without attempting to insert any additional provisions. *Phila. Indem. Ins. Co.*, 2021 WL 4142390, at \*2; *Arch Ins. Co.*, 2013 WL 145502, at \*4.

Although "[i]ndemnity agreements are read as any other contract under Texas law," there are a few specific—yet basic—requirements regarding indemnity agreements. *Phila. Indem. Ins. Co.*, 2021 WL 4142390, at \*2. "In the Fifth Circuit, an indemnitee may recover indemnity if he is able to demonstrate that . . . the indemnitee's claim is based upon a written contract of insurance or indemnification." *Hartford Fire Ins. Co. v. 3i Constr., LLC*,

11

No. 3:16-CV-992-M, 2017 WL 3209522, at *3 (N.D. Tex. May 18, 2017) (citing *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997)). To be enforceable, the indemnity agreement also must provide fair notice and be conspicuous. *XL Specialty Ins. v. Kiewit Offshore Servs.*, 336 F. Supp. 2d 673, 674–75 (S.D. Tex. 2004) (citing *Dresser Indus.*, 853 S.W.2d at 509). Conspicuousness requires that something must appear on the face of the contract to attract the attention of a reasonable person to the indemnity provisions. *Id.* at 675.

Here, there is a written contract that is valid and unambiguous. It is labeled "General Indemnity Agreement" in bold print. Dkt. No. 6-1 at 1. It identifies West Infrastructure Construction, West Materials, Mike West, and Teresa West as "Indemnitors." *Id.* It identifies Fidelity as "Surety." *Id.* Paragraph 2 is labelled "INDEMNITY" in bold print. *Id.* The contract is signed by the defendants in multiple places, and it is notarized. *Id.* at 6–8. The indemnity agreement is a written contract that provides fair notice and conspicuously identifies itself as an indemnity agreement. *Id.* at 1.

Paragraph 2 is the critical portion of the agreement. It provides the following:

Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) an Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement, or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.

*Id.* at 1. Also important, paragraph 30 of the agreement defines "Loss" as:

[A]ll premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the

12

date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

*Id.* at 5.

Based on the plain language of the contract and the provisions within its four corners, the Court concludes that "a contractual indemnity agreement existed between [Fidelity and West]" and that "the agreement obligated [West] to indemnify [Fidelity] in the event claims were made on the bonds issued." *Arch Ins. Co.*, 2013 WL 145502, at \*4 (quoting *Transamerica Ins. Co.*, 66 F.3d at 719).

### b.   Fidelity has met the third element of its claim.

Fidelity's undisputed evidence shows that "claims were made on the bonds issued." *Id.*; *see* Dkt. Nos. 46-1 at 2–4 (affidavit of James Hammel, claims counsel for Fidelity); 46-3; 46-4; 46-5 (payment and performance bonds). It is undisputed that Dahlgren, Morsco Supply, RER Plumbing, and Forterra Pipe made claims on the bonds and that Fidelity paid out $407,643.89 on those bonds. Dkt. No. 46-1 at 4. Accordingly, the Court concludes that Fidelity has met this element of its claim.

### c.   Fidelity has met the fourth element of its claim.

The evidence shows that "all conditions precedent for recovery had occurred, been performed, waived, or excused." *Arch Ins. Co.*, 2013 WL 145502, at \*4 (quoting *Transamerica Ins. Co.*, 66 F.3d at 719). Fidelity asserts in its First Amended Complaint that "[a]ll conditions precedent to Surety's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused." Dkt. No. 6 at 8. West denies that assertion based solely on its lack of knowledge sufficient to admit or deny it. Dkt. No. 12 at 5. But neither Fidelity's complaint nor West's answer is summary judgment evidence. *See Wallace*, 80 F.3d at 1047.

13

More importantly, there are no conditions precedent outlined in the agreement. Dkt. No. 6-1. On the contrary, the agreement requires West to "promptly, upon demand, make payment to [Fidelity] as soon as liability or Loss exists, whether or not [Fidelity] has made any payment." *Id.* at 1. The agreement also requires West to "promptly, upon demand, procure the full and complete discharge of [Fidelity] from all Bonds and all liability in connection with such Bonds." *Id.* And Fidelity did make valid demands of West under the contract. Fidelity sent demand letters to West's attorneys in both October and December 2018. Dkt. Nos. 46-6; 46-7. Those letters are signed by Fidelity's counsel and contain sufficient detail to provide West with fair notice of its obligations under the contract. *Id.*

Fidelity has been patient. It sent demand letters and attempted to negotiate for several months before filing its federal lawsuit. *See* Dkt. No. 1 (original complaint filed April 12, 2019). Then Fidelity had to litigate one of the bond claims in state court before being able to re-engage in negotiations with West regarding indemnification. After West backed out of their settlement agreement, Fidelity twice had to request this Court to reopen the case. *See* Dkt. Nos. 34; 39. Fidelity has done more than is required of it to be indemnified under the agreement; the Court concludes that there are no conditions precedent barring immediate indemnification.[2]

_____

[2] Further, under paragraph 16 of the contract, Fidelity is entitled to immediate specific performance and injunctive relief upon non-payment. Dkt. No. 6-1 at 3 ("Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary."). Federal courts in Texas appear willing to grant specific performance and preliminary injunctions to sureties and force indemnitors to pay in these types of cases. *See, e.g.*, *Hartford Fire Ins. Co.*, 2017 WL 3209522, at *5; *Merchs. Bonding Co.*, 2023 WL 4140455, at *6.

14

### d.       Fidelity has met the fifth element of its claim.

Finally, Fidelity's undisputed evidence demonstrates that it has been damaged because of West's breach. *See, e.g.*, Dkt. No. 46-1 at 4. Fidelity paid out over $407,000 in bond claims and almost $312,000 in attorneys' and consultants' fees. *Id.* Fidelity is merely seeking what it is entitled to under the indemnity agreement—to recoup its costs and be made whole. While the amount and reasonableness of Fidelity's losses are addressed below, the Court concludes as a preliminary matter that Fidelity has suffered some financial loss—and therefore been damaged—due to West's breach of the agreement.

*       *       *

In sum, the Court concludes that the undisputed evidence shows Fidelity has met every element of its claim for breach of an indemnity agreement under Texas law. Therefore, the Court concludes that Fidelity is entitled to judgment as a matter of law and to damages.

### B.       The Court awards Fidelity $729,883.87 in damages because Fidelity is entitled to it under the indemnity agreement, and Fidelity's evidence of its financial losses is detailed and undisputed.

The Court awards Fidelity $729,883.87 in damages, plus pre-judgment and post-judgment interest as permitted by law. *See Post Judgment Interest Rates*, United States District Court for the Northern District of Texas (Nov. 25, 2024 09:00 AM), perma.cc/B2JW-8LA7 (listing post-judgment interest rate as 4.19% on the date of the Court's Order—October 15, 2024). The undisputed facts establish that Fidelity paid out $407,643.89 on the payment bonds: $256,042.14 to Morsco Supply, $89,100.00 to RER Plumbing, and $62,501.75 to Forterra Pipe. Dkt. No. 46-1 at 4. They also show that Fidelity paid an additional $32,856.37 in reasonable and necessary costs to Nicholson Professional Consulting for

15

"construction consulting services" because of West's breach. *Id.* Finally, the facts show that Fidelity has already paid $278,831.11 in billed attorneys' fees and costs related to this action. *Id.* In addition to the $278,831.11 in attorneys' fees already paid out, Fidelity has incurred $7,552.50 in unbilled attorneys' fees, and it reasonably anticipates incurring another $3,000 in attorneys' fees related to its motion for summary judgment. Dkt. No. 45 at 7; Dkt. No. 46-9 at 2–3. This brings the total loss due to attorneys' fees and expenses to $289,383.61. Therefore, the total loss incurred by Fidelity is the sum of: $407,643.89 (three bond payments) + $32,856.37 (consulting fees) + $289,383.61 (billed and unbilled attorneys' fees) = $729,883.87.

### i. Fidelity is entitled to reimbursement for all its losses and expenses under the indemnity agreement.

The Court awards $729,883.87 in damages because the plain language of the contract states Fidelity is entitled to it. First, the contract requires West to indemnify Fidelity for all liability and loss arising from any bond, claim, or action Fidelity is forced to take to enforce the agreement and protect its rights. Dkt. No. 6-1 at 1. Fidelity's undisputed evidence shows that Fidelity paid out on three separate payment and performance bonds. Dkt. Nos. 46-3; 46-4; 46-5. Fidelity has included the bonds in the appendices to its motion for summary judgment; they plainly qualify as "any [b]ond" under the indemnity agreement, just as the claims made on them by the subcontractors West neglected to pay qualify as "any [c]laim." Dkt. No. 6-1 at 1.

Second, all of Fidelity's fees and expenses also qualify as "losses" under the plain language of the indemnity agreement. Dkt. No. 6-1 at 5. Under the agreement, "loss" includes "court costs and expenses, attorneys' fees (including those of [Fidelity]), [and]

16

consultant fees." *Id.* And, of course, "loss" includes "loss, [c]laims, [and] damages" resulting from payment on the bonds. *Id.*

Third—even if Fidelity's evidence were disputed—the indemnity agreement clearly states that "[a]n itemized statement of Loss, sworn to by any officer of [Fidelity], or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount, and extent of the liability of Indemnitors for such Loss." *Id.* at 1 (emphasis in original). Fidelity has provided almost 400 pages of receipts and invoices detailing the consulting and attorneys' fees it paid. Dkt. Nos. 46-8; 46-10. Fidelity has also provided affidavits from James Hamel, in-house counsel for Fidelity, and Ryan DeLaune, outside counsel with Clark Hill for Fidelity, attesting to the amount and reasonableness of those fees. Dkt. Nos. 46-1; 46-9. In short, Fidelity has met the requirements for listing its losses under the indemnity agreement. Even if West had responded to Fidelity's motion (thus making Fidelity's evidence disputed), Fidelity has provided the prima facie evidence required under the contract. The amount of Fidelity's costs is not disputed. Based on its detailed and undisputed evidence, Fidelity is entitled to the $729,883.87 in damages that it requests. *See* Dkt. Nos. 46-1 through 46-10.

### ii. Fidelity's attorneys' fees and expenses were reasonable.

Even if West were not liable for Fidelity's attorneys' fees on a contractual basis and the Court had to calculate the lodestar to conduct a reasonableness analysis, the Court still would award the amount sought. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 (1983) (discussing when a prevailing party should recover its attorneys' fees and the analysis to determine their reasonableness); *Jimenez v. Wood County*, 621 F.3d 372, 379–80 (5th Cir. 2010) (explaining that courts are required to calculate the lodestar—the "number of hours

17

reasonably expended multiplied by the prevailing hourly rate in the community for similar work"—to determine if an attorney's fee is reasonable).

Here, an exhaustive reasonableness analysis is unnecessary because West is contractually obligated to reimburse Fidelity's attorneys' fees. Dkt. No. 6-1 at 1. The Court awards attorneys' fees to Fidelity as covered "losses" based on the plain language of the indemnity agreement. *See id.* at 5; *cf. Phila. Indem. Ins. Co.*, 2021 WL 4142390, at *1–4 (affirming district court's grant of summary judgment "in view of the plain meaning" of an indemnity agreement requiring indemnification for "claims in excess of $2,000,000 plus interest and attorneys' fees on the Bonds").

Fidelity's attorneys' fees are, however, quite reasonable. First—due to West's failure to indemnify Fidelity according to the agreement—Fidelity had to engage Clark Hill PLC for legal services on this matter for over six years. *See* Dkt. No. 46-9. This legal work included an entirely separate negotiation and trial process with Dahlgren Industrial in Texas state courts over payment of the performance bond on behalf of West. In short, this case has likely involved significant time and effort from Fidelity's attorneys. Second, the hourly rates paid by Fidelity to its attorneys were more than reasonable. The hourly rates varied between $100 per hour and $300 per hour. *See, e.g.*, Dkt. No. 46-10 at 4 (listing rates of $100 per hour, $225 per hour, and $300 per hour). Clark Hill is an AmLaw-200 firm with over 25 offices and 750 attorneys, including dozens of attorneys at its Dallas office. Clark Hill, perma.cc/4YXT-2NRD (last visited Nov. 25, 2024). Ryan DeLaune, partner at Clark Hill, has been a licensed attorney since 2010. Dkt. No. 46-9 at 1. His hourly rate is recorded as $300 on several of the invoices submitted by Fidelity. *See, e.g.*, Dkt. No. 46-10 *passim*. For an experienced attorney at a law firm of this size, $300 per hour is more than reasonable.

The Court need not calculate the lodestar or conduct the typical reasonableness analysis to award attorneys' fees because West is already contractually obligated to pay Fidelity's attorneys' fees under the agreement. *See* Dkt. No. 6-1 at 1, 5. In any case, as demonstrated by the brief analysis above, the Court nevertheless concludes that Fidelity's attorneys' fees were reasonable.

### iii.   Fidelity is also entitled to pre-judgment and post-judgment interest.

Fidelity is also entitled to the pre-judgment interest and post-judgment interest it requests. *See* Dkt No. 6 at 8; Dkt. No. 45 at 8 (requesting "the maximum rate allowed by law"). The indemnity agreement states that "[p]re-judgment and post-judgment interest shall accrue from the date of any payment made by [Fidelity] with respect to any of the foregoing at the maximum default rate permitted by law." Dkt. 6-1 at 5. "[T]he foregoing" includes all payments for "loss, [c]laims, damages, court costs and expenses, attorneys' fees (including those of [Fidelity]), [and] consultant fees." *Id.* So, Fidelity is contractually entitled to pre-judgment and post-judgment interest on its entire damage award of $729,883.87—except for any amount of the approximately $10,552.50 in attorneys' fees it has not yet paid. Dkt. No. 45 at 7. And both pre-judgment and post-judgment interest are necessary to equitably reimburse Fidelity for its losses.

The Court awards post-judgment interest at the rate of 4.19%. *See Post Judgment Interest Rates*, United States District Court for the Northern District of Texas (Nov. 25, 2024 09:00 AM), perma.cc/B2JW-8LA7 (listing post-judgment interest rate on October 15, 2024 as 4.19%). This is the post-judgment interest rate—based on 28 U.S.C. § 1961(a) and specified by the Northern District of Texas—that was in effect at the time the Court granted Fidelity's motion for summary judgment (Dkt. No. 47). *See id.*

The Court awards pre-judgment interest at the same rate of 4.19%. *See id.* "State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010).³ Therefore, here, the Court looks to Texas law to set the pre-judgment interest rate. Under Texas law, when the rate is not specified in the contract, "prejudgment interest in a breach of contract case is calculated as simple interest and is based on the postjudgment interest rate applicable at the time of judgment." *Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 514 (Tex. App.—El Paso 2018, no pet.); *see also* Tex. Fin. Code. § 304.103 ("The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of the judgment."). Because 4.19% was the post-judgment interest rate in the Northern District of Texas when the Court granted the summary judgment motion (Dkt. No. 47), the Court follows Texas law and orders pre-judgment interest at the same rate of 4.19%.

In sum, the Court awards Fidelity $729,883.87 in damages—plus pre-judgment and post-judgment interest at the rate of 4.19% on any amounts already paid—because Fidelity is entitled to that amount under the plain language of the indemnity agreement, and the evidence of its costs, expenses, and losses is detailed and undisputed.

---

³ In most cases, granting pre-judgment interest should be "almost automatic." *Triton Marine Fuels, Ltd. v. M/V Pacific Chukotka*, 671 F. Supp. 2d 753, 764 (D. Md. 2009). To deny pre-judgment interest, a court generally "must find circumstances that would make it inequitable for the losing party to pay." *ING Bank, N.V. v. M/V Charana Naree*, 446 F. Supp. 3d 163, 176 n.8 (W.D. La. 2020) (citing *First Bank & Tr. v. Knachel*, 999 F.2d 107, 108 (5th Cir. 1993)). Such circumstances include unwarranted delay in bring suit, a genuine dispute regarding liability, and a bad faith claim. *Id.* None of these circumstances is present here. Therefore, even if this were not a diversity case, the Court would have "broad discretion" in the pre-judgment interest rate it sets and still would look "to state law, or to other reasonable guideposts indicating a fair level of compensation." *Id.* at 177.

## 5.    Conclusion

The Court grants Fidelity's motion for summary judgment because the undisputed

facts show that Fidelity has met all the elements for its breach-of-contract claim and that it is

entitled to judgment as a matter of law. Fidelity's evidence is undisputed because West did

not respond to the summary judgment motion. Even if it had, the evidence still would

likely show that Fidelity is entitled to indemnification by West under the plain language of

their contract. Thus, there still would be no genuine dispute as to any material fact, and

Fidelity would remain entitled to judgment as a matter of law. Likewise, Fidelity's detailed

accounting of its costs, losses, and expenses—which all appear reasonable and necessary—is

not disputed by West. West is contractually obligated to indemnify Fidelity for its "losses"

under their contract, which include consulting fees and attorneys' fees. Therefore, the Court

grants the motion for summary judgment and awards Fidelity $729,883.87, plus pre-

judgment and post-judgment interest at the rate of 4.19% on any amounts already paid.

So ordered on November 25, 2024.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

21